IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RICHEMONT INTERNATIONAL S.A., | |
| Plaintiff, | |
| v. | No. 25-cv-00843 |
| THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED IN SCHEDULE "A," | DEMAND FOR JURY TRIAL |
| Defendants. | |

**AMENDED COMPLAINT**

Richemont International S.A., ("Plaintiff") by and through its undersigned counsel, hereby files this Complaint for trademark infringement under the Lanham Act, offering for sale and selling counterfeit goods in violation of Plaintiff's exclusive rights, violations of the Illinois Uniform Deceptive Trade Practices Act, and civil conspiracy against the Partnerships and Unincorporated Associations Identified in Amended Schedule "A" ("Defendants"). In support hereof, Plaintiff states as follows:

**I.     JURISDICTION AND VENUE**

1.     This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, et seq., t28 U.S.C. § 1338(a)-(b), and 28 U.S.C. § 1331. This Court has jurisdiction over the claims in this action that arise under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a) because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

1

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants, since each Defendant directly targets business activities toward consumers in the United States, including Illinois, through their operation of or assistance in the operation of fully interactive, commercial internet stores operating under Defendant domain names and/or Defendant Internet Stores identified in Amended Schedule A. Specifically, each Defendant directly reaches out to do business with Illinois residents by operating or assisting in the operation of one or more commercial, interactive e-commerce stores that sell products infringing Plaintiff's federally registered trademarks directly to Illinois consumers. In short, each Defendant is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Illinois.

3. Joinder of the Defendants is proper under Fed. R. Civ. P. 20(a) and 35 U.S.C. § 299 as the claims against Defendants arise from the same series of transactions or occurrences relating to offering for sale and selling the same accused products, resulting in a "substantial evidentiary overlap," and share common questions of law and fact. The overlap is evidenced by the identical nature of the products, common sources, packaging, and marketing strategies used by Defendants.

## II. INTRODUCTION

4. Plaintiff filed this action to combat online infringers and counterfeiters who trade upon Plaintiff's reputation and goodwill by selling and/or offering for sale unauthorized and unlicensed products using counterfeit versions of Plaintiff's federally registered trademarks and trade dress. *See* **Amended Exhibit 1**. Defendants created internet stores ("Defendant Internet Stores" or the "Stores") by the dozens and designed them to appear to be selling genuine copies of Plaintiff's products when in fact the Stores are selling counterfeits to unknowing customers.

5. Defendant Internet Stores share unique identifiers, such as similar design elements of the infringing product offered for sale and, on information and belief, these similarities suggest that Defendant Internet Stores share common manufacturing sources, thus establishing that the Defendants' counterfeiting and infringing operations arise out of the same transaction, occurrence, or series of transactions or occurrences. Defendants have gone to great lengths to avoid liability by concealing both their identities and the full scope and interworking of their counterfeiting operation, including changing the names of Stores multiple times, opening new Stores, helping their friends open Stores, and making subtle changes to their products. Plaintiff has been forced to file this action to combat Defendants' willful infringement of Plaintiff's registered trademarks and trade dress, as well as to protect unknowing consumers from purchasing infringing products over the internet. Because of Defendants' actions, Plaintiff has been and continues to be irreparably damaged both through consumer confusion, dilution, and tarnishment of its valuable trademarks. Accordingly, Plaintiff seeks injunctive and monetary relief.

### III. THE PARTIES

#### A. Plaintiff Richemont International S.A.

6. Plaintiff is a public limited company organized and existing under the laws of Switzerland and has its principal place of business at Chemin de la Chênaie 50, 1293 Bellevue, Switzerland. Plaintiff is a global leader in the luxury goods industry, overseeing a prestigious portfolio of internationally renowned brands specializing in fine jewelry, watches, fashion, and accessories. Founded in 1988, Plaintiff is known for its commitment to exceptional craftsmanship, heritage, and innovation. Richemont's brands, including Cartier, Van Cleef & Arpels, and Montblanc, among others, are celebrated worldwide for their artistry and dedication to creating timeless luxury products. ███

███████████████████████████████████

7. Among Plaintiff's most important assets is the intellectual property associated with its ███ brand. Specifically, Plaintiff owns numerous U.S. trademark and trade dress registrations used to identify the luxury goods that it markets and sells under its ███ brand,

8. Genuine ███ branded products are sold through its website[1], authorized retail channels such as Harrods and Macy's, a worldwide network of boutiques, as well as tightly controlled distribution partnerships, and are recognized by the public as being exclusively associated with Plaintiff. ███ Products are regularly featured in national and international media as luxury and innovative products for anyone looking for timeless elegance, exceptional craftsmanship, and sophisticated style. The genuine products have been positively reviewed at exhibitions, on social media, and in magazines.

9. Plaintiff incorporates a variety of distinctive marks in the design of its various ███ Products. As a result of its long-standing use, Plaintiff has established common law trademark and trade dress rights in these marks. It has also registered trademarks, including the following trademarks and trade dress ("███ Trademarks"), with the United States Patent and Trademark Office, and uses them in connection with the advertisement, design, distribution, offer for sale, and sale of its ███ Products

| | | | |
|---|---|---|---|
| ███ | ███ | ███ | ███ |
| ███ | ███ | ███ | |

---

[1] ███

4



10. The registrations for ▇▇▇ Trademarks constitute prima facie evidence of their validity and of Plaintiff's exclusive right to use ▇▇▇ Trademarks pursuant to 15 U.S.C. § 1057(b). ▇▇▇ Trademarks have been used continuously by Plaintiff, its predecessors-in-interest, and associated entities in the United States for decades and have never been abandoned since the first use. ▇▇▇ Trademarks are famous throughout the United States and the world.

11. ▇▇▇ Trademarks are exclusive to Plaintiff and are displayed extensively on ▇▇▇ Products as well as in Plaintiff's marketing and promotion materials. ▇▇▇ Trademarks are distinctive when applied to the ▇▇▇ Products, signifying to the purchaser that the products come from Plaintiff and are manufactured to Plaintiff's exacting quality standards. Whether Plaintiff manufactures the products itself or licenses others to do so, Plaintiff ensures that products bearing its trademarks and trade dress are manufactured to the highest quality standard.

12. The above U.S. registrations for ▇ Trademarks are valid, subsisting, in full force and effect and are currently in use in connection with ▇ Products. True and correct copies of the U.S. Registration Certificates for the above-listed trademarks and trade dress are attached hereto as **Amended <u>Exhibit 1</u>**.

13. Plaintiff is engaged in the business of distributing and retailing high-quality ▇ Products within the Northern District of Illinois under its federally registered trademarks and trade dress,. Plaintiff spends millions of dollars monthly in marketing, advertising, and otherwise promoting ▇ Products. Products bearing ▇ Trademarks have become among the most popular of their kind in the United States and the world. The ▇ brand and products have also been the subject of extensive unsolicited publicity resulting from its exceptional quality, innovative designs, and renown as desired luxury items. ▇ Trademarks have achieved tremendous fame and recognition which has only added to the inherent or acquired distinctiveness of the marks. As such, the goodwill associated with ▇ Trademarks is of incalculable and inestimable value to Plaintiff.

### Defendants

14. Defendants are individuals and entities who, upon information and belief, reside in the People's Republic of China or other foreign jurisdictions. Defendants conduct business throughout the United States, including within the state of Illinois and in this Judicial District, through the operation of fully interactive commercial websites and online commercial marketplaces operating under Defendant Internet Stores. Each Defendant targets the United States, including Illinois, and has offered to sell and, on information and belief, has sold and continues to sell infringing products to consumers within the United States, including Illinois and this Judicial District.

6

15. Defendants are an interrelated group of infringers and counterfeiters who create numerous Defendant Internet Stores and design these stores to appear to be selling genuine ▮▮▮▮▮ Products, while they actually sell inferior imitations of ▮▮▮▮▮ Products. Defendant Internet Stores share unique identifiers, such as common design elements, same or similar counterfeit products offered for sale, similar counterfeit product descriptions, same or substantially similar shopping cart platforms, accepted payment methods, and check-out methods, lack of contact information, and identically or similarly priced counterfeit products and volume sale discounts. As such, Defendant Internet Stores bear a logical relationship among them and suggest that Defendants' illegal operations arise out of the same transactions or occurrences. The tactics used by Defendants to conceal their identities and the full scope of their counterfeiting operation make it virtually impossible for Plaintiff to learn the precise scope and the exact interworking of their counterfeit network. If Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend the Complaint.

### IV. DEFENDANTS' UNLAWFUL CONDUCT

16. The success of Plaintiff's brand has resulted in significant infringement and counterfeiting. Plaintiff has identified numerous marketplace listings on e-Commerce platforms such as, but not limited to, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, which, under various aliases, have been offering for sale, completing sales, and shipping illegal products to consumers in this Judicial District and throughout the United States. Defendants have persisted in creating new aliases. E-commerce sales, including e-commerce internet stores like those of Defendants, have resulted in a sharp increase in the shipment of unauthorized products into the United States. *See* **Exhibit 2** [1-3], U.S. Customs and Border Protection, *Intellectual Property Rights Seizure Statistics, Fiscal Year 2021*. According to Customs and Border Patrol's ("CBP") report, over 90%

of all CBP intellectual property seizures were smaller international mail and express shipments (as opposed to large shipping containers). *Id.* Approximately 60% of CBP seizures originated from mainland China and Hong Kong. *Id.* Counterfeit and pirated products account for billions of dollars in economic losses, resulting in tens of thousands of lost jobs for legitimate businesses and broader economic losses, including lost tax revenue.

17. Groups of counterfeiters, such as Defendants here, are typically in communication with each other. They regularly participate in QQ.com chat rooms and also communicate through websites such as sellerdefense.cn, kaidianyo.com, and kuajingvs.com, where they discuss tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

18. Counterfeiting rings take advantage of the anonymity provided by the internet, which allows them to evade enforcement efforts to combat counterfeiting. For example, counterfeiters take advantage of the fact that marketplace platforms do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to "routinely use false or inaccurate names and addresses when registering with these Internet platforms." *See* **Exhibit 3** [1-4], Daniel C.K. Chow, Alibaba, Amazon, and Counterfeiting in the Age of the Internet, 41 Nw. J. Int'l. L. & Bus. 24 (2020). Additionally, "Internet commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters." *Id.* at 25. Therefore, with the absence of regulation, Defendants may and do garner sales from Illinois residents by setting up and operating e-commerce internet stores that target United States consumers using one or more aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars, and, on information and belief, have sold counterfeit products to residents of Illinois.

8

19. Upon information and belief, at all times relevant hereto, Defendants in this action have had full knowledge of Plaintiff's ownership of ▉▉▉▉ Trademarks, including its exclusive right to use and license such intellectual property and their associated goodwill. Defendants Internet Stores also use the same pictures to advertise their infringing product that Plaintiff uses on its webpage and other online marketplaces to sell and advertise its genuine ▉▉▉▉ Products, sowing further confusion among potential purchasers.

20. Defendants go to great lengths to conceal their identities by using multiple fictitious names and addresses to register and operate their massive network of Defendant Internet Stores. Defendant domain names often use privacy services that conceal the owners' identity and contact information. Upon information and belief, Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed in Amended Schedule A of this Complaint, as well as other unknown fictitious names and addresses. Such Defendant Internet Store registration patterns are one of the many common tactics used by Defendants to conceal their identities, the full scope and interworking of their massive counterfeiting operation, and to avoid being shut down.

21. The infringing products for sale in the Defendant Internet Stores bear similarities and indicia of being related to one another, suggesting that the infringing products were manufactured by and come from a common source and that, upon information and belief, Defendants are interrelated.

22. Upon information and belief, Defendants work in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell counterfeit products in the same transaction or occurrence or the same series of transactions or occurrences. Each e-commerce store operating under an alias offers shipping to the United States, including Illinois, and, on information

and belief, each Defendant has sold infringing products in the United States and Illinois over the internet.

23. Upon information and belief, Defendants also deceive unknowing customers by using ▇ Trademarks without authorization within the content, text, and/or metatags of their websites and marketplace storefronts to attract various search engines on the Internet looking for websites relevant to consumer searches for Plaintiff's ▇ branded products. Additionally, upon information and belief, Defendants use other unauthorized search engine optimization tactics and social media spamming so that the Defendant Internet Stores listings show up at or near the top of relevant search results after others are shut down. As such, Plaintiff also seeks to disable Defendant domain names owned by Defendants that are the means by which the Defendants could continue to sell counterfeit products.

24. Defendants, without authorization or license from Plaintiff, knowingly and willfully used and continue to use the ▇ Trademarks in connection with the advertisement, offer for sale, and sale of the counterfeit products, through, inter alia, the internet. The infringing products are not ▇ Products by Plaintiff. Plaintiff did not manufacture, inspect, or package the infringing products and did not approve the counterfeit products for sale or distribution. Each of the Defendants' Internet Stores offers shipping to the United States, including Illinois, and, on information and belief, each Defendant has sold counterfeit products into the United States, including Illinois.

25. Defendants' use of ▇ Trademarks on or in connection with advertising, marketing, distribution, offering for sale, and sale of infringing products is likely to cause and has caused confusion, mistake, and deception among consumers, including those in Illinois and this Judicial District, and is irreparably harming Plaintiff.

26. Upon information and belief, Defendants will continue to register or acquire listings for the purpose of selling infringing products that infringe upon ▮▮▮ Trademarks unless preliminarily and permanently enjoined.

## COUNT I

### TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

27. Plaintiff hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 26.

28. This is a trademark infringement and counterfeit action against Defendants based on their unauthorized use in commerce of counterfeit imitations of federally registered ▮▮▮ Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. ▮▮▮ Trademarks are distinctive. Consumers have come to expect the highest quality from Plaintiff's products provided under the ▮▮▮ Trademarks.

29. Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products bearing ▮▮▮ Trademarks without Plaintiff's permission.

30. Plaintiff is the exclusive owner of the ▮▮▮ Trademarks. Plaintiff's U.S. registrations for ▮▮▮ Trademarks are in full force and effect. *See* **Amended Exhibit 1**. Upon information and belief, Defendants have knowledge of Plaintiff's rights in the ▮▮▮ Trademarks and are willfully infringing and intentionally using ▮▮▮ Trademarks in connection with counterfeit items. Defendants' willful, intentional, and unauthorized use of the ▮▮▮ Trademarks is likely to cause confusion, mistake, and deception as to the origin and quality of the counterfeit goods among the general public.

31. Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

32. Plaintiff has no adequate remedy at law, and if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its well-known trademarks and trade dress.

33. The injuries sustained by Plaintiff have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offer to sell, and sale of counterfeit versions of Plaintiff's ▮▮▮▮▮ Products.

## COUNT II

### FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125)

34. Plaintiff hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 33.

35. Defendant's advertising, marketing, promotion, distribution, display, offering for sale, sale, and/or otherwise dealing in counterfeit versions of Plaintiff's products has created and is creating a likelihood of confusion, mistake, and deception among the public as to the affiliation, connection, or association with Plaintiff or the origin, sponsorship, or approval of such products.

36. By manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling, and/or otherwise dealing in the counterfeit products, Defendants have offered and shipped goods in interstate commerce.

37. Likewise, by manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling, and/or otherwise dealing in the counterfeit products, Defendants have and continue to trade on the extensive goodwill of Plaintiff to induce customers to purchase a counterfeit version of Plaintiff's products, thereby directly

competing with Plaintiff. Such conduct has permitted and will continue to permit Defendants to make substantial sales and profits based on the goodwill and reputation of Plaintiff, which Plaintiff has amassed through its lengthy nationwide marketing, advertising, sales, and cumulative consumer recognition.

38. Defendants knew or, by the exercise of reasonable care, should have known that their past, current, and continuing advertising, marketing, promotion, distribution, display, offering for sale, sale and/or otherwise dealing in the counterfeit goods has and will continue to cause confusion and mistake or to deceive purchasers, users, and the public.

39. In addition, by using Plaintiff's trademarks and trade dress in connection with the sale of counterfeit products, Defendants create a false designation of origin and a misleading representation of the fact as to the origin and sponsorship of the counterfeit product. By their use of Plaintiff's original photographs in association with the offer and sale of the counterfeit products, Defendants seek to further confuse the relevant public as to the source or sponsorship of their goods by Plaintiff.

40. Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the counterfeit product to the public is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

41. As a direct and proximate result of Defendants' wrongful actions, Plaintiff has been and will continue to be deprived of substantial sales of its genuine products.

42. Plaintiff has no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its brand.

## COUNT III

### VIOLATION OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT (815 ILCS § 510/1, *et seq.*)

43. Plaintiff hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 42.

44. Defendants have engaged in acts violating Illinois law including, but not limited to, passing off their counterfeit product as those of Plaintiff, causing a likelihood of confusion and/or misunderstanding as to the source of their goods, causing a likelihood of confusion and/or misunderstanding as to an affiliation, connection, or association with Plaintiff's genuine and authentic ███████ Products, representing that their products have Plaintiff's approval when they do not, and engaging in other conduct which creates a likelihood of confusion or misunderstanding among the public.

45. The foregoing Defendants' acts constitute a willful violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510/1, *et seq*.

46. Plaintiff has no adequate remedy at law, and Defendants' conduct has caused Plaintiff to suffer damage to its reputation and goodwill. Unless enjoined by this Court, Plaintiff will suffer future irreparable harm as a direct result of Defendants' unlawful activities.

## COUNT IV

## CIVIL CONSPIRACY

47. Plaintiff hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 46.

48. Plaintiff is informed and believes and thereon alleges that Defendants knowingly and voluntarily entered into a scheme and agreement to engage in a combination of unlawful acts and misconduct including, without limitation, a concerted and collaborated effort to maintain the distribution, marketing, advertising, shipping, offer for sale, or sale of counterfeit products in violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510, et seq.

49. The intent, purpose, and objective of the conspiracy and the underlying combination of unlawful acts and misconduct committed by the Defendants was to undermine Plaintiff and its business by unfairly competing against it as described above.

50. The Defendants each understood and accepted the foregoing scheme and agreed to do their respective part, to further accomplish the foregoing intent, purpose, and objective. Thus, by entering the conspiracy, each Defendant has deliberately, willfully, and maliciously permitted, encouraged, and/or induced all the foregoing unlawful acts and misconduct.

51. As a direct and proximate cause of the unlawful acts and misconduct undertaken by each Defendant in furtherance of the conspiracy, Plaintiff has sustained, and unless each Defendant is restrained and enjoined, will continue to sustain severe, immediate, and irreparable harm, damage, and injury for which Plaintiff has no adequate remedy at law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

A. That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all other persons acting for, with, by, through, under, or in active concert with them be temporarily preliminary, and permanently enjoined and restrained from:

   i. Using the ▮▮▮▮ Trademarks in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine product of Plaintiff, or is not authorized by Plaintiff to be sold in connection with ▮▮▮▮ Trademarks;

   ii. Passing off, inducing, or enabling others to sell or pass off any product as a genuine Plaintiff's product or any other product produced by Plaintiff that is not Plaintiff's or not produced under the authority, control, or supervision of Plaintiff and approved by

Plaintiff for sale under ▬▬▬▬ Trademarks and associated with or derived from Plaintiff's trademarks and trade dress;

  iii. Making, using, selling, and/or importing to the United States for retail sale or resale any products that infringe ▬▬▬▬ Trademarks;

  iv. Committing any acts calculated to cause consumers to believe that Defendants' counterfeit product is those sold under the authority, control, or supervision of Plaintiff, or are sponsored by, approved of, or otherwise connected with Plaintiff, including without limitation through use of Plaintiff's original photographs texts in connection with the offer or sale of counterfeit products;

  v. Further infringing ▬▬▬▬ Trademarks and damaging Plaintiff's goodwill;

  vi. Otherwise competing unfairly with Plaintiff in any manner;

  vii. Shipping (including drop-shipping), delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and which bear any ▬▬▬▬ Trademarks, or any reproduction, counterfeit copy, or colorable imitations thereof;

  viii. Using, linking to, transferring, selling, exercising control over, or otherwise owning the Defendant Internet Stores, or any other domain name or online marketplace account that is being used to sell or is how Defendants could continue to sell counterfeit product;

  ix. Operating and/or hosting websites at the Defendant Internet Stores of any other domain names registered or operated by Defendants that are involved in the

distribution, marketing, advertising, offering for sale, or sale of any product bearing the ▮▮▮▮ Trademarks, or reproduction, counterfeit copy, or colorable imitation thereof that is not a genuine product or not authorized by Plaintiff to be sold in connection with the ▮▮▮▮ Trademarks; and,

  x. Registering any additional domain names that use or incorporate any portion of the ▮▮▮▮ Trademarks; and,

 B. That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

  i. Displaying images protected by the ▮▮▮▮ Trademarks in connection with the distribution, advertising, offer for sale and/or sale of any product that is not a genuine product of Plaintiff's or is not authorized by Plaintiff to be sold in connection with the ▮▮▮▮ Trademarks; and

  ii. Shipping, delivering, holding for sale, distributing, returning, transferring, or otherwise moving, storing, or disposing of in any manner products or inventory not manufactured by or for Plaintiff, not authorized by Plaintiff to be sold or offered for sale, and protected by the ▮▮▮▮ Trademarks, or any reproduction, counterfeit copy, or colorable imitation thereof; and,

 C. That Defendants, within fourteen (14) days after service of judgment with notice of entry thereof upon them, be required to file with the Court and serve upon Plaintiff a written report under oath setting forth in detail the manner and form in which Defendants have complied with any and all injunctive relief ordered by this Court;

D.     Entry of an Order that, upon Plaintiff's request, those in privity with Defendants and those with notice of the injunction, including any online marketplaces such as: ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇; payment processors such as PayPal, Stripe, Payoneer, and LianLian; social media platforms such as: Facebook, YouTube, LinkedIn, X; Internet search engines such as Google, Bing, and Yahoo; webhosts for Defendants Domain Names, and domain name registrars, that are provided with notice of the injunction, cease facilitating access to any or all webstores through which Defendants engage in the sale of counterfeit products using the Plaintiff's trademarks and trade dress; shall:

  i.     Disable and cease providing services for any accounts through which Defendants engage in the sale of counterfeit ▇▇▇▇ Products using the ▇▇▇▇ Trademarks, including any accounts associated with the Defendants listed on Amended Schedule A;

  ii.    Disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeiting and infringing counterfeit product using the ▇▇▇▇ Trademarks; and,

  iii.   Take all steps necessary to prevent links to the Defendant Online Stores identified in Amended Schedule A from displaying in search results, including, but not limited to, removing links to the Defendant Online stores from any search index; and,

E.     That each Defendant account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of ▇▇▇▇ Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

F. For Judgment in favor of Plaintiff against Defendants that they have: (a) willfully infringed Plaintiff's ▮▮▮▮ Trademarks in its federally registered trademarks pursuant to 15 U.S.C. § 1114; and (b) otherwise injured the business reputation and business of Plaintiff by Defendants' acts and conduct set forth in this Complaint;

G. For Judgment in favor of Plaintiff against Defendants for actual damages or statutory damages pursuant to 15 U.S.C. § 1117, at the election of Plaintiffs, in an amount to be determined at trial;

H. In the alternative, that Plaintiff be awarded statutory damages pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of Plaintiff's ▮▮▮▮ Trademarks;

I. That Plaintiff be awarded its reasonable attorneys' fees and costs; and,

J. That Plaintiff be awarded any and all other relief that this Court deems equitable and just.

Plaintiff demands trial by jury as to all causes of action so triable.

| Dated: February 11, 2025 | Respectfully submitted, |
|---|---|
| | /s/ James E. Judge<br>Zareefa B. Flener (IL Bar No. 6281397)<br>James E. Judge (IL Bar No. 6243206)<br>Ying Chen (IL Bar No. 6346961)<br>Flener IP Law, LLC<br>77 W. Washington St., Ste. 800<br>Chicago, IL 60602<br>(312) 724-8874<br>jjudge@fleneriplaw.com |